ACCEPTED
04-14-00246-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/24/2015 6:41:29 AM
KEITH HOTTLE
CLERK

NO. 04-14-00246-CR

IN THE COURT OF APPEALS
FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
6/24/2015 6:41:29 AM
KEITH E. HOTTLE
Clerk

_____

DESTYN DAVID FREDERICK,

Appellant

V.

THE STATE OF TEXAS

Apellee

_____

APPEAL FROM CAUSE NO. 11-09-00041-CRL
IN THE DISTRICT COURT LA SALLE COUNTY, TEXAS
FOR THE 81ST / 218TH JUDICIAL DISTRICT OF TEXAS

_____

STATE'S BRIEF

_____

                          Rene Pena
                          District Attorney
                          81st/218th Judicial District


                          Marc Ledet
                          Asst. District Attorney
                          81st/ 218th Judicial District
                          1327 3rd Street
Oral Argument Waived      Floresville, Texas 78026
Unless Granted            Telephone: 830 / 393-2200
                          Fax:  830/ 393-2205
                          State Bar No. 24002459
                          Email: marcledet@81stda.org


                          ATTORNEYS FOR STATE
                          Attorneys for the State of Texas

## PARTIES

*For the Appellant:*

COUNSEL (Trial):

Patrick L. Hancock
1800 McCullough
San Antonio, TX 78212

(Appeal)

Richard Langlois
217 Arden Grove
San Antonio, TX 78215

*For the State:*

Rene Pena – District Attorney
Marc Ledet – Trial/Appellate Attorney
Audrey Louis – Trial Attorney
1327 3rd Street
Floresville, TX 78114

*Presiding Judge:*

Hon. Donna Reyes
81st/218th District Judge
Atascosa County, TX 78026

# TABLE OF CONTENTS

**Page**

Identity of Parties . . . . . . . . . . .. . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . iv

Statement of Facts. . . . . . . . . . . . . . . . . .1

**APPELLANT'S ISSUE NUMBER ONE** . . . . . . . . . . . . . 6

Upon a statutory sufficiency review of the testimony by the accomplice witness Marcus Serna pursuant to Article 38.14, Texas Code of Criminal Procedure, the evidence is insufficient to connect Appellant to support a finding that Appellant was guilty of Felony Murder pursuant to Texas Penal Code 19.02(b)(3).

**APPELLANT'S ISSUE NUMBER TWO**

The evidence is legally insufficient to support a finding that Appellant was guilty of Felony Murder pursuant to the Texas Penal Code 19.02(b)(3)

Prayer. . . . . . . . . . . . . . . . . . . . . . . .21

Certificates of Service and Compliance . . . . . 22,23

# INDEX OF AUTHORITIES

**Case**                                                                                     **Page**

*Jackson v. Virginia, 443 U.S. 307, 316,*
*99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).* . . . . .   17

Cathey v. State, *992 S.W.2d 460*
*(Tex.Crim.App. 1999).* . . . . . . . . . . . . . . . 8

*Dowthitt v. State,* 931 S.W.2d 244
(Tex.Crim.App. 1996). . . . . . . . . . . . . . . . 16

*Golden v. State,* 851 S.W.2d 291
(Tex.Crim.App. 1993). . . . . . . . . . . . . . . . 8

*Gross v. State,* 380 S.W.3d 181
Tex.Crim.App. 2012). . . . . . . . . . . . . . . . . 15

*Guevara v. State*, 152 S.W.3d 45
(Tex. Crim. App. 2004). . . . . . . . . . . . . . . 12

*Laster v. State*, 275 S.W.3d 512
(Tex. Crim. App. 2009). . . . . . . . . . . . . . . 17

*Malone v. State,* 253 S.W.3d 253
(Tex.Crim.App. 2008). . . . . . . . . . . . . . . . 7

*Reed v. State,* 744 S.W.2d 112
(Tex.Crim.App. 1999). . . . . . . . . . . . . . . . 14

*Simmons v. State,* 282 S.W.3d 504
(Tex.Crim.App. 2009). . . . . . . . . . . . . . . . 8

*Trevino v. State,* 991 S.W.2d 849
(Tex.Crim.App. 1999). . . . . . . . . . . . . . . . 8

**Constitutions, Statutes, & Rules**

TEX. R. APP. P. 38.2(a)(1)(B). . . . . . . . . . . . 1

Tex. C. Crim. P. 38.14. . . . . . . . . . . . . . . . . . 7

Tex. Penal C. 7.02. . . . . . . . . . . . . . . . . . . 18

NO. 04-14-00246-CR


IN THE COURT OF APPEALS
FOURTH SUPREME JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

DESTYN DAVID FREDERICK,
Appellant

V.

THE STATE OF TEXAS,
Appellee

TO THE HONORABLE COURT OF APPEALS:

Now comes the State of Texas and files its brief in answer to the brief of DESTYN DAVID FREDERICK, Appellant, appealing his guilty verdict and punishment ordered in the 81st/218thJudicial District of La Salle County, Texas, Honorable Judge Donna Rayes presiding.


**STATEMENT OF FACTS**

Pursuant to TEX. R. APP. P. 38.2(a)(1)(B), the State challenges all factual assertions contained in Appellant's brief, except admissions expressly made

therein, and submits its version of the relevant facts below in its reply to Appellant's issues.

On June 13, 2011, Mr. Israel Casas and his wife of sixty-three years, Guadalupe Casas, went on a bus to San Antonio from Cotulla, Texas for the purpose of a doctor's appointment concerning a chronic condition of his heart. As the bus had other passengers to pick up at various points in south Texas, the Mr. and Mrs. Casas had to get up at four o'clock in the morning to go meet the bus. After attending Mr. Casas' medical appointment, they waited for the bus and again rode home to Cotulla. Due to the delivery of other passengers on the bus, they did not make it home until 7 o'clock that evening, some fifteen hours after their departure. [R.R. Vol. IX, pp. 7-10]

Upon arrival at their home, they did the activities which were normal for them. They watched television, particularly the news, then talked to their daughter on the telephone. Once that conversation had ended, both Mr. and Mrs. Casas went to bed. [R.R. Vol. IX, pp. 10-

11]  Their evening, the last they would spend together, was just beginning however.

Unbeknownst to the Casas family, the Appellant and two of his friends, Marcus Serna and Rigo Guerra, had spent the day together and were now out on the town. The three had already conspired to commit a burglary. Rigo Guerra decided they needed a gun, so they went to Frederick's mother's house and smuggled it out of the house.  As the gun was unloaded, the three then went to Serna's house to obtain shotgun shells.  {R.R. Vol VIII, pp. 98-99]  They dump the truck at a property in Cotulla and walk across Interstate 35, where they acquire a Gator ATV which they use to drive down the interstate's feeder road, under the bridge and arrive at the Casas home.  [R.R. Vol. VIII, pp.87-88, 129]

Still intent on burglary, Rigo Guerra grabs the shotgun and goes into the Casas' garage, where they grab sodas out of the refrigerator.  While Serna and Frederick want to wait, Appellant decides to kick in

the door to the home and enter.  Serna follows behind him.  [R.R. Vol. VIII, pp.  123-124]

Mr.  and Mrs.  Casas were awakened by a thudding noise at their home which could be heard from the door which enters their kitchen from outside.  Mr. Casas called out if anyone was in the house and then, dressed only in boxer shorts, jumped to the door to close it for the protection of him and his wife.  Just as Mr. Casas was closing the door, Appellant fired into the door, hitting Mr. Casas in the face with both shot from the shotgun and wood fragments from the exploding door.  He fell to the ground on his back while Mrs. Casas screamed for the intruders to take what they wanted and leave them alone.  [R.R. Vol.  IX,  pp.  14-19]  The gunman, who was tall and thin, entered the room and shot Mrs. Casas in the arm before leaving.  An arm she would later lose as doctors were unable to save it. [R.R. Vol. IX, pp. 18-21]

Dragging herself to the phone, with her one good remaining arm, Mrs. Casas called 911 and alerted them

to what had occurred.  Mr. Casas, bleeding profusely from the face and neck, got off the floor and pulled himself beside her on the bed.  Due to the location and severity of the injury, Mr. Casas was unable to speak. [R.R. Vol. IX, pp. 17-23]

Mrs. Casas stayed on the phone with dispatch, who informed her that deputies were at their home but remained outside as they were unaware of whether the shooter was in the house.  Mr. Casas got up and walked outside to alert the deputies that there was no shooter remaining in the house so they could enter and attend to his wife's injuries.  Two ambulances were dispatched to the scene and Mr. Casas and Mrs. Casas were taken separately.  Mrs. Casas reach Dilley, Texas, where she was airlifted to a hospital in San Antonio for surgery. Mr. Casas was pronounced dead before his ambulance even got to Dilley.  [R.R. Vol. IX, pp. 21-26] During the time that Mr. and Mrs. Casas were lying injured in their home and awaiting assistance, Appellant, Serna and Guerra had dumped the stolen gator

and started riding around in Frederick's pickup truck, still in possession of the shotgun that was used to kill Mr. Casas.  [R.R. Vol. VI, pp.  223-229, 237-238]

While in the vehicle and smoking a synthetic marijuana, Guerra decides that he wishes to rob the Valero convenience store located in Cotulla.  Complying with his wishes, Frederick and Serna drop him off at the Valero while he enters inside with the shotgun. Frederick and Serna leave the scene in the pickup while Guerra is robbing the store. Frederick and Serna hide the truck, and then walk to a high spot where they can watch the robbery.  All while continuing to smoke the synthetic marijuana.  [R.R. Vol. VI, pp.  223-229, 237-238]

## APPELLANT'S POINTS OF ERROR NUMBER ONE

Upon a statutory sufficiency review of the testimony by the accomplice witness, Marcus Serna pursuant to Article 38.14, Texas Code of Criminal Procedure, the evidence is insufficient to connect Appellant to support a finding that Appellant was guilty of Felony Murder pursuant to Texas Penal Code 19.02(b)(3).

## STATE'S REPLY

Even with the subtraction of Marcus Serna's testimony as an accomplice, there was substantial evidence provided from which rational jurors could conclude that Appellant was sufficiently connected to the crime.

## Argument and Authorities

In review of this issue, there is no doubt that Marcus Serna was an accomplice, and therefore the State is under a requirement to produce corroborating evidence of Appellant's guilt. The State's case cannot be solely based upon the testimony of the accomplice witness alone.

A reviewing court must consider the evidence present before the jury absent that which was provided by the accomplice. Texas Rule of Criminal Procedure 38.14. Upon examination of the remaining evidence, the reviewing court must make a determination if there is any evidence that tends to connect the accused with the commission of a crime. *Malone v. State,* 253 S.W.3d 253, 257 (Tex.Crim.App. 2008) The standard of review

in regards to the remaining evidence is whether it tends to connect Appellant to the crime, not that the remaining evidence must prove the case beyond a reasonable doubt. *Trevino v. State,* 991 S.W.2d 849, 851 (Tex.Crim.App. 1999); *Cathey v. State,* 992 S.W.2d 460, 462 (Tex.Crim.App. 1999) While the remaining evidence only has to link Appellant to the crime in some manner, mere presence at the scene is not sufficient. *Simmons v. State,* 282 S.W.3d 504, 508 (Tex.Crim.App. 2009); *Golden v. State,* 851 S.W.2d 291,294 (Tex.Crim.App. 1993)

While Appellant cites *Trevino* in his brief, the logic of his argument is a constant shell game ignoring its holding. For the State's case to stand, it only has to link Appellant to the crime through corroborating testimony, not, as the *Trevino* court held, prove its case beyond a reasonable doubt. Appellant attempts to make it appear as if he were only present at the scene and played absolutely no part in

the murder of Israel Casas.  As we shall discuss below, this was far from being factually correct.

Contrary to his assertions, we know that Appellant was the one who provided the murder weapon.  It was being carried by the three for the purpose of breaking into houses.  Appellant knew that the gun was accompanying them on what was to be an attempt to break into people's houses and burglarize them.  He heard Guerra state that is was "hit a lick night" before leaving to rob houses, and "I'm a gangster, this is what I do" after shooting.  It didn't curtail his actions in assisting Guerra throughout the night. These facts were part of his two separate statements to law enforcement and which were read to the jury.  Appellant even admits that there was a discussion of them, instigated by Guerra, to commit burglary while they were in the process of switching from Appellant's truck to the Gator.  [R.R. Vol. VI, pp. 223-229, 237-238]

Further, a jury is allowed to infer intent from the actions of the defendant, including what he may have

done after the crime itself. In this incident, Appellant:

1.  Provided the murder weapon which accompanied them on the burglary run for protection;

2.  Helped ditch the Gator in which they were riding;

3.  Used his own truck to leave the site where the Gator was left;

4.  Concealed his truck from protection both at the time they transferred to the less identifiable Gator and then again at the end of the night;

5.  Convey Rigo Guerra, with Appellant's shotgun, to the Valero station knowing Guerra's intent to commit another robber. Appellant also knew that Guerra had already shot someone earlier. His only action after dropping Guerra off to commit another robbery was to conceal his truck, find a nice spot where he and Serna could watch the robbery, and smoke more synthetic marijuana.

One of the facts of this case known to the jury was that Serna in fact gave two statements as he had lied to law enforcement in the first one. The first statement, Appellant told a story where he did not even go on the gator with Guerra and Serna, but remained behind. This lie was told with the obvious intent of not even placing him at the scene. Once confronted with this untruth, he changed his story, but once again tried to negate any part he played in the murder.

Another inconvenient fact in regards to his mere presence, and which would lead a jury to disbelieve he was mere a bystander was DNA evidence found at the Casas home. In the carport, it was determined that an empty soda can which had come from the Casas outdoor refrigerator had been drunk by him. So in spite of claims of no knowledge and no intent, as the time all three were standing outside the Casas home with a gun, Appellant was calmly helping himself to the Casas' beverages.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Id*. at 50.

Therefore, the jury which convicted Appellant knew that he had supplied the gun to the shooter, had known that the intent of their trip was going to be burglary, had hidden his truck twice during the night and appropriated another vehicle, had driven the shooter around including conveying him to commit another crime, which he made sure he could watch while enjoying synthetic marijuana, and then attempt to mislead police in that he was even there.

Appellant's shell game involves picking pieces of the evidence which are only provided by Serna, and then trying to hold the State's corroborating evidence to a

standard of proof beyond a reasonable doubt. A perfect example would be the shotgun shells which came in only through the testimony of Serna. Appellant opines that because that fact is taken out by the reviewing court, then he could not be culpable under the accomplice witness rule. Not only does this thinking discount all corroborating evidence which points to his guilt, but it also tries to switch the rules of review. This Court need only find that the corroborating evidence somehow connected Appellant to the crime, not that it proves the case beyond a reasonable doubt.

Time and again, Appellant in his brief points out the fact that he made sure the gun was unloaded when he initially handed it to Guerra. However, this brings up multiple interesting points:

1. This fact comes from Appellant's statement, which has already been shown at court to be self-serving and deceitful;

2. We know from Serna's testimony that they made a separate trip to his house to get shotgun

shells. While not subject to this review, it is an important fact in that the corroborating evidence is not required to prove this case in its entirety all by itself. It also shows that even in his second statement, Appellant was misleading in an attempt to protect himself in omitting the trip to Serna's home to get shotgun shells.; and

3. It is evident from the facts of the case that the gun was loaded at the time they entered the Casas' home, as proved by the shooting of Mr. and Ms. Casas.

Only under Appellant's logic does the State's case fail review. Only when you switch the standard from finding a mere connection to the crime versus reasonable doubt, does Appellant's reasoning hold water. All facts and circumstances may be considered in this Court's review of whether there was sufficient corroboration to the accomplice witness testimony. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App. 1999)

Appellant states in his brief that he was merely present and had no intent to commit a burglary by entering beyond the garage.  We know from a review of the corroborating evidence that even if Appellant did not go into the house further than the garage, he had committed multiple acts at several points during the night to facilitate this burglary occurring and to avoid possible detection or capture.  We also know from the corroborating evidence listed above that he had full knowledge of what was occurring and it indicates his intent to participate, which is why Appellant's citation of *Gross* is nonsensical.  *Gross v. State,* 380 S.W.3d 181 (Tex.Crim.App. 2012) [Where reversal due to no evidence showing that defendant ever knew they were going to shoot the victim, involvement with the victim was serendipitous and not part of a plan, as was the presence of the shotgun used to kill the victim.]

As indicated prior, the State concedes that mere presence at the scene of a crime is insufficient corroboration, but there is so much corroborating

evidence which shows that Appellant was a full and willing participant. Further, while mere presence may be insufficient, when coupled with other suspicious circumstances, may tend to connect Appellant to the offense. *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App. 1996) There can be no doubt that there is sufficient corroborating evidence, when taken as a whole, that tend to connect Appellant to this crime.

## APPELLANT'S POINTS OF ERROR NUMBER TWO

The evidence is legally insufficient to support a finding that Appellant was guilty of Felony Murder pursuant to Texas Penal Code 19.02(b)(3).

## STATE'S REPLY

Jurors may make inferences as to intent, design and plan based upon the evidence, and they correctly determined there was sufficient evidence to show Appellant guilty beyond a reasonable doubt.

### Argument and Authorities

The United States Constitution requires that a criminal conviction be supported by evidence "necessary

to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A reviewing court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319; *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009). Proper deference must be given to the jury's determination of the credibility of the evidence. *Id*. Unlike the discussion above, there is no need to discount any of the evidence which was submitted at trial.

In spite of this fact, Appellant continues to argue that at the time he handed the gun to Guerra, it was unloaded. As this issue's review allows us to examine all evidence before the jury, including accomplice witness, we know that there was a trip to Serna's house to get shells to load the gun.

Appellant goes further, stating that even though they had talked about robbing houses, they had hid his truck, had gotten a less identifiable ride in the Gator, and were now drinking sodas in a strange garage, he somehow could not have foreseen Guerra and Serna would actually rob the house. The weapon they were carrying, the manner in which they approached the house, their actual presence in the garage during the middle of the night and their conversations up until this point ALL show how Appellant could have anticipated what had happened. He had spent the evening planning and assisting to make sure it happened, but then he was surprised when it actually did happen? That strains credulity.

It also goes further in arguing that he did not have the intent to shoot Israel Casas, which does not matter. Under Texas Penal Code 7.02(b), he is not required to develop that intent. Rather, he merely becomes responsible when the murder was a result of a crime he and his cohorts did intend to commit, which

was burglary of a habitation. Appellant falsely claims that he would have had to have been a part of a conversation between Guerra and Serna where Guerra talked about killing people to have the necessary intent for culpability. This is simply not true, all that is required is whether he should have anticipated the shooting as a result of the burglary.

When discussing reasonable anticipation of Mr. Casas shooting, we are talking about entering a strange home in the middle of the night. We know from evidence that the electricity was on and that there were dogs barking, an indication that the house was not abandoned. As Appellant himself had a soft drink out of the Casas fridge, he knew this was not an abandoned house. Now if Appellant cannot be said to have a reasonable anticipation of Guerra shooting someone inside the house with his shotgun, then it begs the question: what was the shotgun for? Unless Appellant thinks there might have been a covey of quail inside the Casas home, there can be no other intent for

providing it and carrying it into the home than to shoot those inside of it should the burglars need that protection. The only logical conclusion is that they carried the gun into the house to facilitate the burglary, so it is ridiculous to claim that it could not be anticipated when the even for which the gun was purposed actually happened.

The State would reference all the actions detailed therein by the State in support of Appellant's involvement and participation in the burglary of the Casas home. The State will not waste the Court's time by listing them a second time.

Upon consideration in a light most favorable to the verdict, there are multiple acts by Appellant to show him a willing participant in the act of burglary of the Casas home. He also supplied the weapon which was taken into the home and resulted in the shooting of Mr. and Mrs. Casas. When arming yourself to rob a house, the shooting of an occupant of that house is a natural and possible outcome. The very presence of the gun

speaks to an intent to shoot anyone who they may encounter inside, otherwise there would be no reason to have it. Under 7.02(b) of the Penal Code, Appellant's participation in the burglary and the likely outcome of a shooting coming from that burglary make him culpable. The evidence was sufficient for the jury to make their verdict.

## PRAYER

Wherefore, the State respectfully prays this Honorable Court affirm the judgment of the trial court, the jury and for such relief to which it may be justly entitled.

Respectfully submitted,


Rene Pena
District Attorney
81st/218th Judicial District

  /s Marc Ledet
Marc Ledet
Asst. District Attorney
81st/ 218th Judicial District
1327 Third Street
Floresville, Texas 78026
Telephone: 830 / 393-2200
Fax:  830/ 393-2205
State Bar No. 24002459
marcledet@81stda.org


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing State's Brief has been sent electronically to the attorney of record on this the 24th day of June, 2015.



  /s Marc Ledet
Marc Ledet
Asst. District Attorney
81st/218th Judicial District

## CERTIFICATE OF COMPLIANCE

I hereby certify that in accordance with the rules the number of words contained in this brief as verified by Microsoft Word is 3,325.


_/s Marc Ledet_____